I'm John Zuloff and I represent Vincent Gamboa. In 1993, when Mr. Gamboa was 25 years old, he was sentenced to 30 years in prison for conspiracy to distribute a relatively small amount of crack cocaine. In 2009, Mr. Gamboa petitioned Judge Burgess for a writ of Auditor Corrella, asking the judge to look at the extraordinary circumstances of his case and asking the judge to consider resentencing in that case. Judge Burgess denied that motion. He said that the under 28 U.S.C. 2255 and thus not appropriate for a writ of Auditor Corrella. We're asking this court to find that in extraordinary cases or extraordinary circumstances, in fact, a district court judge does have the authority to grant a writ of Auditor Corrella. We believe that Judge Burgess erred when he concluded that he had no authority. He should have at least considered Mr. Gamboa's extraordinary circumstances and we would ask this court to remand this case back to Judge Burgess to do that, to consider whether... Your biggest hurdle is the Valdez-Pacheco case. Tell us why that case doesn't control. Yes, Your Honor. In Valdez-Pacheco, the court found that indeed Mr. Valdez-Pacheco could not avail himself of the writ of Auditor Corrella because his claims could have been issued when he said that Valdez-Pacheco was distinguishable because in Valdez, the claims that he made were available to him at the time he appealed. They were available to him within the one-year period of 2255. Of course, we're not bound by the district court decision. I understand that. We're bound by the Valdez-Pacheco decision, so you're asking us to distinguish that case along the lines of Zilly's distinction? Well, what Zilly did was he said, look, in the Kessick case, the arguments that were to be made were only developed after that one-year period. The problem with that is that, you know, Booker is not retroactively applicable, so how can Kessick be consistent with our case law that says you don't apply Booker retroactively? Well, can I answer in two different ways, Your Honor? First, we've argued more than just Booker in our case. You know, we have a situation where my client was first given an extraordinarily high sentence compared to other people similarly situated. But that could have been addressed in a 2255. Second, Your Honor, the case law has really changed with the Kimbrough line of re-sentencing guidelines, which set forth a disparity between powder and crack cocaine. The cases have really found that that disparity is inappropriate today. Isn't there an avenue to seek re-sentencing under Kimbrough? Well, Your Honor, it seems to me that what we do is we present to the district court what we believe to be extraordinary circumstances. And the extraordinary circumstances can either find we're correct or we're not. But you have to do it under a procedure or posture that's consistent with the law. You can't just have a, you know, at large extraordinary circumstances argument. Well, Your Honor, the Morgan decision, the U.S. Supreme Court decision, seemed to say that extraordinary writs are still available even after 2255. To fill the gaps. If there are any gaps that 2255 and the other extraordinary writs don't fill. Yeah, there is. But what's the gap here? Well, first of all, the Morgan decision didn't say that. The U.S. Supreme Court hasn't said that. The U.S. Supreme Court simply said that, in fact, writs are still available to do justice in extraordinary circumstances. We've said that in interpreting the Supreme Court decision that it's only available if there's a gap. Because if every prisoner could come in and plead, everyone has a story. And if every prisoner could come in and say, my case is unique, my case is extraordinary, and here's why. And the district court had to consider all of those, the courts would be swamped because there's no limitations. So you're asking us to make a ruling that at any time a prisoner can come in and claim extraordinary circumstances and get a writ? Well, Your Honor, it seems to me that in this case, that what you have is an extraordinarily high sentence. And then you have, if you look at the sentencing transcript, you have the judge making a finding that I don't have any choice about this. I have to give you a minimum of 360 months in prison. What we know now is that the Booker decision has indeed found that that mandatory sentencing procedure was unconstitutional. So I'm at least saying that those cases where someone was sentenced according to the mandatory guidelines to something as extraordinarily high as 30 years indeed ought to be able to come in and make an argument that I have extraordinary circumstances here. First, I was sentenced under the career criminal guidelines, which rely on this crack cocaine disparity. I was sentenced at a time indeed when the judge thought it was compulsory for him to give at least a 360-month sentence. Was the judge wrong at the time when he imposed sentence? Your Honor, I think the case law at that point said that he had to give at least a 360-month sentence. But it seems to me that this court can say that indeed it's unfair to have someone sentenced to a 30-year prison sentence and have no guarantee that he's going to get that length of sentence was because the guidelines were mandatory at the time. Well, isn't the remedy to go back and ask for resentencing based on the amendment to the guidelines? Under the crack cocaine guidelines, you mean? Well, unfortunately, the Sentencing Guideline Commission did not reduce the guidelines for career offender guidelines. And so we don't have any remedy for Mr. Gamboa at this point. He had a double whammy. He had the career offender and then he had the crack cocaine. That's right. But the career offender guidelines, Your Honor, are based on the notion that crack cocaine should be sentenced much more severely than powder cocaine. Did you get any indication from Judge Burgess that if he were free to consider this, that he would sentence at a lower level? I was quite struck by Judge Zille's opinion, where he says, I remember very clearly this case. And at the time, it seemed to me much too high a sentence and so on. And of course, the original sentencing judge was Judge Tanner. That's right. And so did you get any indication at all from Judge Burgess as to his view of the propriety or fairness of the sentence? Your Honor, I don't think we did. What we received was simply his view that he didn't have any discretion here. And all we're saying is that we ought to be able to at least present to the judge the extraordinary circumstances that we believe are here. That's what writs are all about, is to do justice in extraordinary circumstances. And it seems to me that this Court can find that it should be remanded to the judge to at least consider whether or not there are exceptional circumstances. And if there is an opportunity, what we would say to the Court was, indeed, there are extraordinary circumstances. This man got an exceptionally long sentence compared with other people similarly situated. His sentencing was based on a career offender guideline, which was based on the crack cocaine disparity that has now been debunked by the courts. Why don't we hear from the government, and then we'll give you a chance to respond. That's fine. Thank you. Good morning, Your Honors. May it please the Court. My name is Michael Morgan. I represent the government in this appeal. As I understand Counsel's argument, he is asking for authority for the District Court to entertain a writ of Adida Corrella. The lawful at the time, now I would like to challenge. This Court has squarely held that the writ of Adida Corrella does not lie to press a surely equitable claim. Are you saying that if Judge Zille's opinion were on appeal to us, that Judge Zille is wrong? Judge Zille is dead wrong, with all respect. And did the Attorney's Office appeal Judge Zille's? What became of that case? The Solicitor General elected not to appeal. I'm not privy to that decision-making, so I can't speak one way or the other as to why that was the case in that particular instance. But, I mean, there is just no doubt that the Keswick decision was wrongly decided. There's no doubt in your mind. There's certainly no doubt in mine. There might be no doubt in Judge Zille's mind that it was correct. I suppose that's true. I would just point the Court to the Court's Carrington decision, which is really all foursquare resolves this case. Carrington specifically has held that the writ will not lie to allow a defendant to raise a Booker claim by means of a writ of Adida Corrella. Writ of Adida Corrella exists to the extent it exists at all in the criminal context, and I would suggest that's an open question still in this circuit. But accepting that premise, it exists if there has been shown a legal defect in the judgment that arose post-conviction. Well, we know from the Cruz decision that there is no legal defect. Booker's not retroactively applicable, so there is no legal defect in the judgment of conviction for which this writ could lie. There were avenues for the petitioner to raise this claim. He has raised a number of post-conviction claims. And I should point out that in the litany of post-conviction applications that have been made, there was never a Booker claim. Booker, he didn't raise a Booker claim until four years after Booker was decided. I mean, I would argue even if your Court was prepared to entertain the equities, that delay as an equitable matter would foreclose reliance on the writ. Let me ask you this. If the U.S. Attorney's Office were to conclude, and I'm not asking you to concede that it would, but imagine a case in which the U.S. Attorney's Office decides that a sentence imposed under the earlier regime, in fact, was quite unfair. And if the U.S. Attorney's Office decided it wished somehow to obtain resentencing, what avenues would be available for the U.S. Attorney's Office and Defense Counsel, acting together, to get resentencing? Is there any mechanism available at all? No. So let me make sure that I understand the full extent of your answer. The United States Government, represented by the U.S. Attorney's Office, has decided that the sentence is unfair. The defendant, of course, thinks that the sentence is unfair, and you say there's no solution. If it's a matter of pure fairness, I would say no. I mean, there's, you know, you could make a Rule 35 motion if the requisites for that relief were available. But if ten years down the road, hypothetically, a new prosecutor looks at the case and says, boy, you know, I personally don't like that sentence. I didn't say personally. I said the position of the U.S. Attorney's Office. Well, I mean, the position of the U.S. Attorney's Office was at the time that this was an appropriate sentence. But if a new U.S. attorney came in, if a new U.S. attorney came in and said this sentence is inherently unfair, you're saying there's no way the sentence could be visited. I'm saying that there's, under those circumstances, as I'm thinking of the various writs and procedures that are available, that no. I mean, 20 to 55 doesn't even lie. I mean, the core mechanism for challenging a conviction or sentence doesn't lie because someone thinks it's unfair. Let me ask you, let me ask you to tag on to Judge Fletcher's question. Suppose that the defense filed a motion and said this sentence was unfair. Are you saying that you couldn't stand up and say, we agree? I'm saying that in this circumstance, I mean. No, just stick to my hypothesis. Okay. I mean, well, I mean, with respect, I need a little context. I mean, you're saying they file a motion. I guess it's what kind of a motion? If this writ had been challenged. Okay. If this writ, if they filed this writ, the U.S. Attorney's Office could come in and say, we agree that this was unfair. I think a district judge following the law would still have to deny the writ. I mean, we can't, the U.S. Attorney's Office doesn't have the power to encourage the district court to flout the law. And if there is no legal mechanism to raise the claim, however, however equitable you may think the claim may be, you know, a district judge is, you know, he's got a lot of power. There's a lot of power, but it's not unlimited power. Right. And I think that that's. So in your answer, and this may be the right answer, but your answer is that all participants, the U.S. Attorney's Office representing the United States government, the defendant and the district court all agree that the sentence is unfair. And nonetheless, there's no remedy for that. That's your position. I think that in a case like this, that, yes, that's my position. Now, in a case like this, that's a weasel word. What do you mean, like this? Well, in this procedural posture, no, we could, everyone could get together and agree that we're going to try to craft some writ, and so try it via Corella. Well, it happened in Keswick. I mean, the exact same thing happened. The judge awarded relief under the writ. You think it's wrong. The Solicitor General didn't appeal, so it's possible. It's possible that a district judge can make a mistake and that the government doesn't appeal. That is possible. But it, I mean, I mean, this Court could turn around and say, well, Judge Zille was right. I mean, I don't see how you would square that with Carrington. I don't see how you would square that with Cruz. But the Court could do that. I mean, that's the issue. I mean, if you're saying could a district judge do it, I mean, a district judge could sign any order. It doesn't mean it's lawful. Well, that's why we exist, to determine if it's lawful. But the question was whether or not there was an avenue available. Yes, I agree, Your Honor. And I think there is none. In this procedural posture, there is no avenue for this defendant. There is no legal defect. I mean, what we're basically saying is that if everyone thinks that the defendant got a sentence that, though lawful when imposed, and I would point out lawful now, is unfair, somehow, some way, we need to craft a mechanism for that to be cured. And I would ask, what's the limiting factor for that? Most defendants think their sentence is unfair. So how are we supposed to cabin that? The question we asked you was if everyone agreed. So that would be some limitation on it, because I'm sure in most cases the prosecution is not going to agree that the sentence was unfair. So I'm sure there would be a finite number of cases where they would agree. That was our question to you. Well, I mean, yes, okay. Then if everyone agrees, I still take the position that if everyone agrees and there is no legal defect in the judgment and the judgment has become final, that there is no remedy. That's the position that I would have to take because a district court's power to act is cabined by the statutes. And a district court is just not free to do rough-and-ready justice. Well, the judge can interpret the statutes. The interpretation may be different than yours. You think it's dead wrong. The judge may think it's clearly right. But the judge clearly has discretion to determine whether or not in his or her interpretation of the writ requirements are met and whether or not there is a defect in the judge's view. And your definition of defect may be different than the judge's definition of defect. Well, I mean, yes, Your Honor. I disagree that the district judge has discretion to determine if there's a defect. I mean, whether there's a defect in the judgment is a legal question. Well, maybe discretion isn't the word. But he definitely has the he can interpret the statute. And just because there's interpretation difference for yours doesn't mean that he's flouted the law. Well, respectfully, if we're talking about Judge Zille, it wasn't just my interpretation. It was this Court's interpretation. I mean, the judge just This Court never got a chance to weigh in on that specific case. So it's not our interpretation regarding that particular case. No, not that particular case. But in Keswick, the Court was pointed to the precedent was on point. And the way the Court got around it was just saying, well, I think it's dictative. Really? I mean, that's just not a possible characterization of the Court's It's not unheard of. Well, you know, I'd like to say that Judge Zille is a conscientious and careful judge. He might have been correct. He might have been incorrect. But I don't think you can say with complete assurance, as you keep saying, that Judge Zille was wrong. You can say you disagree. I'm not trying to impugn Judge Zille, but I Pretty good joke. Well, I mean, to be frank, I think he was wrong. I mean, and I think I can say that. You can accept the fact that you think he was wrong, but to say it unequivocally, as if it were a legally decided matter, is a little misleading. I'm not trying to be misleading. I'm stating my analysis of his opinion and this Court's opinion. And this Court can disagree with me, of course. But, I mean, as an advocate for the government, I'm just giving you my That's my argument. I think he was wrong. And, you know We understand that. We understand that argument. All right. Well, I mean, in summation, I mean, the government's position is simply that whatever relief may have been available to Mr. Gambo at one time was certainly not by the writ of Dena Corrella. And this Court's precedents make that point clear. Thank you. Thank you. Response? Your Honor, thank you. I'd like to just say that the sentence that Mr. Gambo received was extraordinary. Thirty years is an extraordinarily high sentence. No, it's hard for us to judge how extraordinary it was. I mean, yes, it was long. The guidelines and the statutory structure at that time was quite harsh. I don't have a PSR in front of me from the original sentencing. Obviously, it was based, I mean, we all understand it was based upon not only crack cocaine, but also career sentencing. So even though Young, apparently, he was a career offender. I mean, how do I know, as I sit here, how unfair it was? When he was 19, he sold a few grams of cocaine. When he was 20, he sold a little bit of phenylcycladine. And then he got to this case. And he ends up with a sentence that, by today's standards even, would look tremendously long to almost any lawyer here in the Western District. We've seen a lot of those cases from those days with that sentence. Well, I understand. The writ of Odetta Carrillo and the extraordinary writs are meant to give the court a mechanism in extraordinary cases to remedy a wrong. That's what the Morgan case said, the U.S. Supreme Court decision said. We need a mechanism for extraordinary cases. And all we're saying is remand this back to Judge Burgess. Let us present our arguments for this being an extraordinary circumstance. The difficulty is, just like with Judge Zille, I mean, the district court judge is close to the case, familiar with everything. Even if we disagreed with him, on what basis would we send it back? Because the district court judge, I mean, has the case before it. And so why would we send it back to the district court judge who looked at it the first time? You'd send it back because, as a matter of law, he was wrong in his conclusion that he had no authority to consider a writ of Odetta Carrillo. He never looked at the circumstances of this case. He simply ruled, as a matter of law, I can't do that. Why was he wrong? Are you relying on Judge Zille's case to say he was wrong? Well, Your Honor, in Carrington, for example, the court seemed to be saying that, in extraordinary circumstances, if presented to the court, that in extraordinary circumstances we'll consider equitable relief. But did Carrington say if there's a gap in the relief available? Well, if you look at Judge Zille's decision, what he did was he said, So basically you're saying we should be persuaded by Judge Zille's distinction of the cases. Well, his logic was that in Carrington the defendants didn't show any extraordinary circumstances. They didn't show that they were uniquely impacted by the guidelines. If, indeed, somebody comes forward in extraordinary circumstances  then the court ought to be able to consider that. So Judge Burgess's ruling that he had no authority, we would argue, is wrong. That he did have authority, he should at least consider the circumstances that are presented. That's what extraordinary writs are all about, is to do justice in extraordinary cases. Okay. Thank you. Thank you very much. Thanks, both sides, for their argument. The case of United States v. Gamboa now submitted for decision.
judges: Alarcon, Fletcher W. , Rawlinson